1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

SCOTT ALAN FREEBURG,

8                              Petitioner,

9          v.

10   DONALD HOLBROOK,

11                              Respondent.

Case No. C12-376 JLR-BAT

**REPORT AND
RECOMMENDATION**

12        Petitioner Scott Alan Freeburg seeks 28 U.S.C. § 2254 habeas relief from his convictions

13   of first degree murder, first degree burglary, and second degree assault.  Dkt. 1 (habeas petition)

14   and Dkt. 40 (amended habeas petition).  Mr. Freeburg contends that the state circumvented his

15   right to counsel, he was denied a fair trial because the indictment was fatally flawed, his

16   sentences were prohibited by the Ex Post Facto Clause, and there was insufficient evidence to

17   support a conviction of first degree armed robbery.  The Court recommends **DENYING** the first

18   three claims as Mr. Freeburg has failed to demonstrate that the state-court adjudication of his

19   claims was contrary to, or an unreasonable application of, established federal law, or was an

20   unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C.

21   § 2254(d)(1)–(2).  The Court recommends denying the fourth claim as it is not exhausted and is

22   now procedurally barred.  The Court also recommends **DENYING** an evidentiary hearing and

23   issuance of a certificate of appealability.

REPORT AND RECOMMENDATION- 1

# BACKGROUND

**A.      Statement of Facts**

The Washington Court of Appeals summarized the facts as follows:

In the early morning hours of November 17, 1994, Freeburg entered the apartment shared by Jose Rodriguez and his girlfriend, Darlene Martinez, and shot and killed Rodriguez.

According to Martinez, she and Rodriguez were in bed when they heard someone pounding on the door. Rodriguez got out of bed. Martinez got up and followed him. Freeburg was at the door. He told Rodriguez that he had come to collect money owed to him by Martine Gomez who had lived at the apartment a few months earlier. Rodriguez told Freeburg he knew nothing of the debt but Freeburg demanded to come in and telephone Gomez.

Rodriguez and Martinez tried to prevent Freeburg from coming into the apartment. He forced his way in, brandishing a gun. When Martinez tried to call the police, Freeburg grabbed her, threw her on the couch, pointed the gun at her head, and told her to shut up or he would kill her. At this point, Rodriguez struck Freeburg on the head with an unknown object. While Freeburg and Rodriguez wrestled, Martinez headed for the door. As she was fleeing, Martinez heard one gunshot followed by a second one. She looked back and saw Rodriguez's body go limp.

Freeburg then opened the door and Martinez saw Freeburg's friend Lawrence Kuhn in the hall holding a gun. Freeburg pushed Martinez into the wall and Kuhn entered the apartment. Freeburg told Kuhn to shoot Martinez if she moved. Freeburg went into the bedroom to look for money. Martinez rushed at Kuhn, knocked him into the wall and ran out of the apartment. Kuhn fired a shot at her, but missed. Freeburg and Kuhn then fled. Martinez banged on the door of another apartment. The occupant let Martinez in and they called 911. When they returned to Martinez's apartment, Rodriguez was nearly dead on the couch. Rodriguez later died from the second gunshot, which entered through the back of his neck.

Jeanette Stuker, who was with Freeburg and Kuhn on the night of the murder, was waiting in Freeburg's truck while he and Kuhn went into Rodriguez's apartment. Stuker testified that she had taken drugs that evening and was in and out of consciousness while she waited in the truck. She woke up when she heard screaming and the sound of two gun shots. According to Stuker, when Freeburg and Kuhn returned, Freeburg was bleeding. While they were driving away, Freeburg told Stuker that the guy in the apartment hit him with a lamp and Freeburg shot him. She asked Freeburg if the guy he shot was dead and Freeburg said he didn't think so, because he shot him in the stomach. Freeburg also said

that he left his prescription glasses in the apartment and he was afraid the police would be able to identify him through his glasses.  Freeburg then said something to Stuker to the effect that he needed to leave the country.

Freda Kuhn testified that a day or two before the shooting, Freeburg and her nephew, Larry Kuhn visited her. [footnote omitted]  She said that during that visit, Freeburg and Kuhn told her they were planning to steal money from a Mexican who had a large sum of money.  They also said they planned to steal drugs from him because he was selling drugs to children.

At trial, Freeburg admitted he shot Rodriguez, but claimed it was self defense. [footnote omitted]  He denied there was a plan to rob Rodriguez.  According to Freeburg, he and Kuhn went to see Rodriguez about an automobile trade. Rodriguez invited them into the apartment.  Kuhn and Rodriguez argued about money and drugs.  The argument escalated into a fight and Freeburg separated the two men.  Freeburg said that as he turned towards Kuhn, Rodriguez hit him in the back of the head with an unknown object, knocking him to his knees. Freeburg looked up, saw Rodriguez pointing a gun at him at close range, and rushed at Rodriguez.  As the two wrestled, the gun fired once, and Freeburg then got control of it. Rodriguez kneed Freeburg and grabbed his crotch.  Freeburg testified that he fired the gun without looking or thinking and Rodriguez fell to the couch. [court's footnote.  Freeburg's account of the shooting was undermined by the testimony of his medical expert who described the fatal shot to the back of Rodriguez's neck as "well-placed" and indicative of the shooter having "good control over the victim." 17 RP 3027.]  Kuhn grabbed the gun, and he and Freeburg left in Freeburg's truck.

The day after the shooting, Freeburg went to work to arrange to have a co-worker deposit his paycheck. [footnote omitted]  He spent the next four days traveling in northwest Washington.  On the fifth day, Freeburg signed on as a crew member for a boat sailing to Mexico.  Six months later, he sailed from Mexico to Canada.  In Canada he assumed a false identity, carried false identification, and changed his appearance.  In February 1997, he was arrested by Canadian authorities.

Dkt. 44, Exhibit 3, pp. 2-3.

The Washington Court of Appeals also summarized the following facts regarding the state court appellate history that led to the most recent resentencing of Mr. Freeburg:

Freeburg was convicted of murder, burglary, and assault in 1998.  This court overturned his convictions. [footnote omitted]  He was subsequently reconvicted of the same crimes in 2002.  The trial court sentenced Freeburg to life without parole as a persistent offender.  On appeal, after affirming his convictions, this court reversed his sentence. [footnote omitted]  Freeburg was

REPORT AND RECOMMENDATION- 3

resentenced within his standard range to 471 months, but on appeal, this court remanded for resentencing on Freeburg's deadly weapon enhancements. [footnote 3. *State v. Freeburg*, noted at 134 Wn. App. 1037, 2006 WL 2338175 (2006), *review denied*, 161 Wn.2d 1009, 166 P.3d 1218 (2007).] Freeburg was then resentenced to 411 months. He appealed and this court affirmed, except for an error in the community custody term. The trial court had checked a box for a community custody term of 24 to 48 months. A previous paragraph imposed a 24 month community custody term. The State conceded the longer term (24 to 48 months) had been indicated by mistake. We therefore remanded to the superior court "for resentencing for the sole purpose of striking the incorrect community custody term ... of Freeburg's judgment and sentence." *State v. Freeburg*, noted at 147 Wn. App. 1036, 2008 WL 4967995, at *3, *review denied*, 166 Wn.2d 1015, 210 P.3d 1019 (2009).

Counsel was appointed to represent Freeburg at resentencing. At the hearing, counsel informed the court that he had not been able to meet or confer with Freeburg, due to Freeburg's conditions of confinement. Freeburg requested a delay or continuance of the hearing to discuss with counsel several issues concerning his judgment and sentence. The court allowed Freeburg to speak and to describe his issues for the record. Freeburg told the court his offender score should be seven instead of nine due to "out-of-state convictions"; community custody could not run consecutive to a fully served sentence; and his trial was made unfair by submission of firearm enhancements that did not exist when his offense was committed. [footnote 4. Report of Proceedings (Sept. 23, 2009) at 6-7.]

The court concluded that the remand order permitted no action to be taken other than correcting the community custody term. Freeburg acknowledged that he had no objection to the court making that correction, but said he thought the Court of Appeals was wrong to limit the trial court's discretion. The judge explained he could not overrule the appellate court's order and concluded there would be no point in delaying the hearing to allow Freeburg to consult with counsel about his other concerns.

*Id.,* Exhibit 4, pp. 2-3.

**B.    Statement of Procedural History**

**1.    Direct Appeal – 2002 Judgment**

Following his convictions in 2002, the superior court initially sentenced Mr. Freeburg to life imprisonment without parole. Dkt. 44. Mr. Freeburg appealed from his convictions and sentence to the Washington Court of Appeals. *Id.*, Exhibits 6 and 9. The Washington Court of

REPORT AND RECOMMENDATION- 4

Appeals affirmed the convictions, but reversed the sentence of life imprisonment, concluding that Mr. Freeburg's prior federal conviction was not comparable to a "strike" offense under Washington's "three strikes" law.  *Id.*, Exhibit 3. The Washington Court of Appeals remanded for resentencing.  *Id.*, Exhibit 3.

Mr. Freeburg moved for reconsideration of the court's decision to affirm his convictions.  *Id.*, Exhibit 10.  The Washington Court of Appeals denied the motion for reconsideration.  *Id.*, Exhibit 11.  Mr. Freeburg sought review by the Washington Supreme Court.  *Id.*, Exhibit 12.  The Washington Supreme Court denied review on November 3, 2004.  *Id.*, Exhibit 14.  The Washington Court of Appeals issued its mandate on January 25, 2005.  *Id.*, Exhibit 15.

## 2.      2005 Judgment

On remand, the superior court resentenced Mr. Freeburg in 2005, imposing a standard range sentence plus sentencing enhancements.  *Id.,* Exhibit 16.  Mr. Freeburg appealed his new sentence to the Washington Court of Appeals.  *Id.*, Exhibit 17.  The Washington Court of Appeals affirmed the standard range sentence, but reversed the sentencing enhancements and remanded for resentencing as to the sentencing enhancements only.  *Id.*, Exhibit 21.

Mr. Freeburg sought review by the Washington Supreme Court, arguing that the superior court's determination that Mr. Freeburg's out-of-state convictions were comparable to Washington offenses for purposes of determining Mr. Freeburg's offender score.  *Id.*, Exhibit 22.  The Washington Supreme Court denied review on September 6, 2007.  *Id.*, Exhibit 24.

## 3.      2005 Personal Restraint Petition

Mr. Freeburg filed a personal restraint petition in 2005.  *Id.*, Exhibit 25.  The Washington Court of Appeals denied the petition.  *Id.*, Exhibit 26.  Mr. Freeburg sought review by the Washington Supreme Court.  *Id.*, Exhibit 27.  The Washington Supreme Court dismissed the

REPORT AND RECOMMENDATION- 5

1   motion for discretionary review as untimely. *Id.*, Exhibit 28. The state court issued a certificate

2   of finality on June 1, 2006. *Id.*, Exhibit 29.

3       **4.    2007 Judgment**

4          On remand, the superior court resentenced Mr. Freeburg in December 2007. *Id.*, Exhibit

5   1; *see also* Exhibit 30, Verbatim Report of Proceedings (December 6, 2007). Mr. Freeburg

6   appealed from the 2007 judgment and sentence to the Washington Court of Appeals. *Id.*,

7   Exhibits 31and 34. The Washington Court of Appeals rejected Mr. Freeburg's challenges to his

8   new sentence, rejected as too conclusory the challenges to the convictions, and remanded solely

9   to correct a scrivener's error in the judgment and sentence concerning the length of community

10  custody. *Id.*, Exhibit 35. Mr. Freeburg sought review by the Washington Supreme Court,

11  arguing that his offender score was improperly calculated; the court of appeals wrongfully

12  rejected his objection to the prior calculation of his offender score; the court of appeals

13  wrongfully refused to consider claims raised in his Statement of Additional Grounds; the court

14  erred by imposing deadly weapon enhancements; ineffective assistance of counsel because his

15  counsel failed to contest the comparability of prior convictions; and cumulative error that denied

16  him a fair trial. *Id.,* Exhibit 38, at 1-4.

17         The Washington Supreme Court denied review on July 8, 2009. *Id.,* Exhibit 40. The

18  Washington Court of Appeals issued the mandate on July 31, 2009. *Id.,* Exhibit 41.

19      **5.    2009 Superior Court Order**

20         The superior court entered an order correcting the scrivener's error in the judgment and

21  sentence on September 23, 2009. *Id.,* Exhibit 2; *see also* Exhibit 42, Verbatim Report of

22  Proceedings, *State v. Freeburg*, King County Cause No. 94-1-08085-3. Mr. Freeburg appealed

23  from the order to the Washington Court of Appeals. *Id.,* Exhibits 43 and 46. The Washington

Court of Appeals affirmed the order.  *Id.,* Exhibit 4.  Mr. Freeburg sought review by the

Washington Supreme Court, contending that he was denied his right to meaningful assistance of

counsel when he was denied any chance to confer with counsel before or during the resentencing

hearing; he was denied a fair and accurate sentence when the trial court at resentencing refused

to consider issues outside the appellate court mandate; the trial court erred in refusing to consider

arguments that Mr. Freeburg's offender score was incorrect; the trial court erred in refusing to

consider his claim that three firearm enhancements were not authorized by statute; that the

imposition of deadly weapon enhancements that were unauthorized by the jury's verdict violated

the ex post facto prohibition.  *Id.*, Exhibit 47, at 1-3.

The Washington Supreme Court denied review on February 2, 2011.  *Id.,* Exhibit 48. The

Washington Court of Appeals issued the mandate on March 2, 2011.  *Id.,* Exhibit 49.

### 6.      2012 Personal Restraint Petition

Mr. Freeburg filed a personal restraint petition in March 2012.  *Id.,* Exhibit 50. The

Washington Court of Appeals dismissed the personal restraint petition as untimely under RCW

10.73.090.  *Id.,* Exhibit 54.  Mr. Freeburg then sought discretionary review by the Washington

Supreme Court.  *Id.,* Exhibit 55.  The Commissioner of the Washington Supreme Court denied

review, agreeing that the personal restraint petition was time barred.  *Id.,* Exhibit 58.  Mr.

Freeburg moved to modify the Commissioner's ruling and for the appointment of counsel.  *Id.,*

Exhibits 59 and 60.  The Washington Supreme Court denied both motions on March 5, 2014.

*Id.,* Exhibit 61. The state court issued a certificate of finality on March 26, 2014.  *Id.,* Exhibit 62.

### EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion.  *Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a hearing

REPORT AND RECOMMENDATION- 7

1    could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

2    the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.  In determining whether

3    relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

4    the state court. *Cullen v. Pinholster*, ---U.S.---, 131 S.Ct. 1388 (2011).  A hearing is not required

5    if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d).  *Landrigan,*

6    550 U.S. at 474.  "It follows that if the record refutes the applicant's factual allegations or

7    otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

8    *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011).  The Court finds it unnecessary to hold an

9    evidentiary hearing because Mr. Freeburg's claims may be resolved on the existing state court

10   record.

**DISCUSSION**

**A.    Exhaustion**

13        In his original petition, Mr. Freeburg raised three grounds for habeas relief:  (1) the

14   State circumvented his right to counsel by denying Petitioner open and complete communication

15   with counsel at sentencing; (2) he was denied accurate notice and fair trial by jury because the

16   indictment was fatally flawed indictment and charged non-existent crimes; and (3) two

17   unauthorized sentences for weapon enhancements violates prohibition on ex post facto

18   punishment.  Dkt. 1, pp. 6-8.  There is no dispute that Mr. Freeburg exhausted these claims.

19        In his amended petition of June 2014, Mr. Freeburg added the following fourth ground

20   for relief:

21            Scott Alan Freeburg, the Petitioner acting in pro se is amending his § 2254
         with the ground that his 1976 First Degree Armed Robbery conviction that was
22       used in his current conviction's point score calculation, is invalid on its face and
         should not have been used to give Freeburg so much time in the form of an
23       exceptional sentence.  The 1976 First Degree Robbery was beyond the state
         court's jurisdiction to give Freeburg because the sawed off shotgun was destroyed

REPORT AND RECOMMENDATION- 8

1    in the making and could never be used as a firearm, and as such, did not meet the required "firearm" element that Freeburg was charged with. The conviction of First Degree Robbery with a Firearm cannot stand. The state caused delay in releasing evidence should overcome any time bar. The state never disputed that the shotgun was unfunctioning [sic] and could never be made operational. Evidence proved that this was not a firearm, yet no evidentiary hearing was granted.

Dkt. 40, p. 2.

Respondent argues that Mr. Freeburg failed to properly exhaust Claim 4 because he did not fairly present the claim to the Washington Supreme Court. The Court agrees. Mr. Freeburg raised the claim in an untimely personal restraint petition that the state court denied as barred. Thus, Claim 4 is now procedurally barred and it is not cognizable absent a showing of cause and prejudice, or actual innocence.

### 1.      Failure to Exhaust Claim 4

A petitioner must properly exhaust state remedies before seeking a federal writ of habeas corpus. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To properly exhaust, the petitioner must give the state court a fair opportunity to correct the alleged violation of federal constitutional rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29; *see also Picard v. Connor*, 404 U.S. 270, 276-78 (1971); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The petitioner bears the burden to prove a claim has been properly exhausted. *Lambrix v. Singletary*, 520 U.S. 518, 523-24 (1997).

"To fairly present the claims, 'the applicant must present his claims in a procedurally correct manner.'" *Carty v. Thaler*, 583 F.3d 244, 254 (5th Cir. 2009) (internal quotations

REPORT AND RECOMMENDATION- 9

omitted).  The purpose of the exhaustion rule would be frustrated if the Court were to allow

federal review to a prisoner who had presented his claim to the state court but in such a manner

that the state court could not, consistent with its own procedural rules, have entertained it.

*Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  If a petitioner fails to obey state procedural

rules, the state court may decline review of a claim based on that procedural default.  *Coleman v.

Thompson*, 501 U.S. 722, 731-32 (1991).  If the state court clearly and expressly states that its

judgment rests on a state procedural bar, the petitioner is barred from asserting the same claim in

a habeas proceeding.  *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Noltie v. Peterson*, 9 F.3d 802,

805 (9th Cir. 1993); *Shumway v. Payne*, 223 F.3d 982 (9th Cir. 2000).

Washington law establishes a statutory time limitation for a petitioner to collaterally

challenge a judgment and sentence.  The statute bars a petitioner from filing a collateral

challenge to a judgment and sentence more than one year after the judgment becomes final.

RCW 10.73.090(1).  The state courts determined that Mr. Freeburg's judgment and sentence

became final in 2009 and that his 2012 personal restraint petition was untimely under the state

time bar statute.  Dkt. 44, Exhibits 54 and 58.  Because the personal restraint petition was time

barred, Claim 4 was not properly exhausted and is now procedurally barred.  The claim is not

cognizable in federal court absent a showing of cause and prejudice or actual innocence.

### 2.    Cause and Actual Prejudice or Actual Innocence

Unless it would result in a "fundamental miscarriage of justice," a petitioner who

procedurally defaults may receive review of the defaulted claims only if he demonstrates "cause"

for his procedural default and "actual prejudice" stemming from the alleged errors.  *Coleman v.

Thompson*, 501 U.S. at 750.  The petitioner must show an objective factor actually caused the

failure to properly exhaust a claim.  Interference by state officials, the unavailability of the legal

1    or factual basis for a claim, or constitutionally ineffective assistance of counsel may constitute

2    cause. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner's own inadequacies are not

3    sufficient cause to excuse a procedural default. *Hughes v. Idaho State Bd. of Corrections*, 800

4    F.2d 905, 907-09 (9th Cir. 1986); *Thomas v. Lewis*, 945 F.2d 1119 (9th Cir. 1991). "An

5    evidentiary hearing is not necessary to allow a petitioner to show cause and prejudice if the court

6    determines as a matter of law that he cannot satisfy the standard." *Clark v. Lewis*, 1 F.3d 814,

7    820 (9th Cir. 1993).

8         "[I]n an extraordinary case, where a constitutional violation has probably resulted in the

9    conviction of one who is actually innocent, a federal habeas court may grant the writ even in the

10   absence of a showing of cause for the procedural default." *Wood v. Hall*, 130 F.3d 373, 379 (9th

11   Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. at 496). "To meet this manifest injustice

12   exception, [the petitioner] must demonstrate more than that 'a reasonable doubt exists in the light

13   of the new evidence.'" *Wood*, 130 F.3d at 379 (quoting *Schlup v. Delo*, 513 U.S. 298, 329

14   (1995)). "[T]he petitioner must show that it is more likely than not that no reasonable juror

15   would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. "[T]he

16   miscarriage of justice exception is concerned with actual as compared to legal innocence."

17   *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

18        Mr. Freeburg cannot demonstrate cause and prejudice or a fundamental miscarriage of

19   justice. He cannot show cause, i.e., an objective external factor outside his control that excused

20   his procedural default. He also does not show prejudice, i.e., that an error of constitutional

21   proportions infected his whole trial. Mr. Freeburg also did not produce any evidence of actual

22   innocence that would excuse his procedural default. Because he cannot excuse his procedural

23   default, Claim 4 is not cognizable in the habeas corpus proceeding and it should therefore be

REPORT AND RECOMMENDATION- 11

1    dismissed.

2    **B.      Claim 1 – Denial of Continuance in 2009 Resentencing Hearing**

3          In Claim 1, Mr. Freeburg contends that the trial judge violated his right to adequately

4    consult with his attorney when the judge denied a requested continuance of the 2009

5    resentencing hearing.

6          The record reflects that the Washington Court of Appeals remanded the case solely for

7    the purpose of correcting a scrivener's error in the judgment and sentence as to the duration of

8    the term of community placement.  Dkt. 44, Exhibit 35.  The appellate court had already

9    affirmed both the convictions and the duration of the sentence of confinement.  *Id.*, Exhibit 3

10   (affirming convictions); Exhibit 21 (affirming standard range sentence); and Exhibit 35

11   (affirming sentence, but remanding to correct scrivener's error).

12         A judge's decision to deny a request for a continuance will be overturned only for an

13   abuse of discretion.  *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983); *Armant v. Marquez*, 772 F.2d

14   552, 556 (9th Cir. 1985).  The petitioner must show actual prejudice to his defense resulting from

15   the trial court's refusal to grant the continuance.  *Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th

16   Cir. 1997); *United States v. Shirley*, 884 F.2d 1130 (9th Cir. 1989).   In cases on direct review,

17   the Ninth Circuit applies a four prong standard for claims that a judge improperly denied a

18   continuance:

19            (1) the extent of the defendant's diligence in readying the defense; (2) the
             likelihood that the continuance would have satisfied the defendant's need; (3) the
20            inconvenience to the court, opposing party, and witnesses; and (4) the extent to
             which the defendant may have been harmed. In order to constitute reversible
21            error, the defendant must show that the denial resulted in actual prejudice to his
             defense.
22

23   *United States v. Nguyen*, 88 F.3d 812, 819 (9th Cir. 1996) (*quoting United States v. Robertson*,

     15 F.3d 862, 873 (9th Cir. 1994)).

     REPORT AND RECOMMENDATION- 12

1    The Washington Court of Appeals rejected Mr. Freeburg's claim that the denial of the

2    continuance was an abuse of discretion:

3         Freeburg argues the court's denial of a continuance effectively deprived
     him of his right to counsel during sentencing and was therefore an abuse of
     discretion.  He contends he was prejudiced by his lawyer's inability to prepare.
4    According to Freeburg, the trial court had discretion to address his other issues.
     He cites RAP 2.5(c)(1), which our Supreme Court has interpreted as allowing a
5    trial court "to revisit an issue on remand that was not the subject of the earlier
     appeal."  *State v. Kilgore*, 167 Wn.2d 28, 38, 216 P.3d 393 (2009).
6

7         Freeburg fails to recognize that a trial court may not, on remand, exceed
     the scope of an appellate court order which specifically limits what a trial court
8    may do on remand.  "An appellate court may, no doubt, where the error in the trial
     relates to a particular issue only, which does not depend for its proper
9    understanding or trial on other issues presented, reverse and remand the cause for
     trial on the particular issue erroneously tried, and on that issue alone." *Godefroy v.*
10   *Reilly*, 140 Wn. 650, 657, 250 P. 59 (1926); *Keegan v. Grant County Pub. Util.*
     *Dist. No. 2*, 34 Wn. App. 274, 285, 661 P.2d 146 (1983).  When the appellate
11   court intends to limit the remand to consideration of a single issue, "it will give
     instructions to that effect, in unmistakable language."  *Godefroy*, 140 Wash. at
12   657, 250 P. 59.

13        In *Kilgore*, the first appellate decision reversed convictions on two counts,
     affirmed on the five remaining counts, and remanded "for further proceedings"
14   including the possible retrial of the two reversed convictions.  *Kilgore*, 167 Wn.2d
     at 33-34, 216 P.3d 393.  Due to the open ended remand, the trial court could have
15   exercised discretion to reach the new sentencing issues Kilgore wanted to raise,
     but chose not to do so.  *Kilgore*, 167 Wn.2d at 34, 42, 216 P.3d 393.  Because the
16   trial court chose not to exercise its discretion, there was no trial court decision for
     the appellate court to review and Kilgore's appeal was dismissed.
17

18        Freeburg contends that under *Kilgore*, if he had been able to consult with
     counsel, counsel might have been able to convince the court to exercise its
19   discretion to correct other errors he believes still remain in his sentence.  But here,
     unlike in *Kilgore*, the court no longer had discretion.  After Freeburg's most
20   recent appeal, this court remanded for "the sole purpose of striking the incorrect
     community custody term."  The language limiting the trial court's discretion is
21   unmistakable.  That this court termed the hearing on remand a "resentencing"
     does not implicate RAP 2.5(c)(1) nor does it transform the hearing into a "critical
22   stage" of proceedings.  Due to the specificity of this court's order, the trial court
     had no discretion to consider any other issue.  Because no prejudice resulted from
23   the denial of Freeburg's request to confer with counsel, his constitutional right to
     counsel was not violated.

REPORT AND RECOMMENDATION- 13

Freeburg also argues his right to counsel as guaranteed by court rule was violated by the denial of the continuance. A court rule requires that a lawyer be provided "at every stage of the proceedings, including sentencing, appeal, and post-conviction review." CrR 3.1(b)(2). An asserted violation of a court rule is governed by the harmless error test. Any error under CrR 3.1(b)(2) here was harmless due to the lack of possible prejudice. *Robinson*, 153 Wn.2d at 696-97.

Because no prejudice resulted to Freeburg from his lack of opportunity to confer with counsel, the trial court did not abuse its discretion in denying his request for a continuance.

Dkt. 44, Exhibit 4, pp. 4-6.

Mr. Freeburg does not show the state court adjudication of Claim 1 was an unreasonable application of clearly established federal law and therefore, Claim 1 should be denied.

## C.    Claim 2 – Adequate Notice of Sentencing Enhancements

In Claim 2, Mr. Freeburg contends he did not receive adequate notice of the sentencing enhancements because the trial proceeded by incorrectly referring to the statute in existence at the time of trial, rather than the statute in effect at the time of the crime.

The Sixth Amendment guarantees a defendant the right to reasonable notice of the charges. *In re Oliver*, 333 U.S. 257, 273 (1948); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948). The right is satisfied if the charging document provides a sufficient description of the charge to be able to adequately prepare a defense and to plead double jeopardy against a second prosecution. *Hamling v. United States*, 418 U.S. 87, 117 (1974) (*citing Hagner v. United States*, 285 U.S. 427 (1932); *United States v. Debrow*, 346 U.S. 374 (1953)). "An indictment is not constitutionally defective if it states 'the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against.'" *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985) (*quoting Russell v. United States*, 369 U.S. 749, 763-64 (1962)). To determine whether the defendant received adequate notice, the Court looks first to the information. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994); *Nevius v. Sumner*, 852 F.2d 463, 471 (9th Cir. 1998); *Lincoln v.*

REPORT AND RECOMMENDATION- 14

1  *Sunn*, 807 F.2d 805, 812 (9th Cir. 1987).  However, an alleged defect in the information does not

2  automatically entitle a petitioner to collateral relief.  *United States v. Normandeau*, 800 F.2d 953,

3  958 (9th Cir. 1986), *overruled in part on other grounds by United States v. Nordby,* 225 F.3d

4  1053 (9th Cir. 2000).  Even where the information itself does not give adequate notice, "a

5  defendant can be adequately notified of the nature and cause of the accusation against him by

6  means other than the charging document."  *Calderon v. Prunty*, 59 F.3d 1005, 1009 (9th Cir.

7  1995) (prosecutor's opening statement, the evidence introduced at trial, and judge's description

8  of the crime scene); *Morrison v. Estelle*, 981 F.2d 425, 428-29 (9th Cir. 1992) (prosecutor's

9  presentation of evidence of defendant's intent to commit robbery provided sufficient notice of

10 felony-murder theory).  What the Constitution forbids is ambushing the defense with a new

11 theory of culpability after both sides have rested.  *Stephens v. Borg*, 59 F.3d 932, 935 (9th Cir.

12 1995).  An error is grounds for reversal only if it misled the defendant to his prejudice.

13 *Echavarria-Olarte v. Reno*, 35 F.3d 395, 399 (9th Cir. 1994).

14      The sufficiency of a charging document is generally not a matter for federal habeas

15 corpus relief.  *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993) (*citing Alexander v. McCotter*,

16 775 F.2d 595, 598 (5th Cir. 1985)).  A petitioner is entitled to habeas corpus relief only when the

17 indictment is so deficient that the convicting court was without jurisdiction.  *Yohey*, 985 F.2d at

18 229; *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994); *Alexander v. McCotter*, 775 F.2d at

19 598.  The Court should not consider a sufficiency challenge where the state's highest court has

20 held the trial court had jurisdiction.  *Yohey*, 985 F.2d at 229.

21      At the time of Mr. Freeburg's crime in 1994, Washington law authorized a sentencing

22 enhancement of 18 months when a defendant used a deadly weapon in the commission of first

23 degree burglary, and 12 months when the defendant used a weapon to commit second degree

1    assault.  Former RCW 9.94A.310 (1994); *see also* Dkt. 44, Exhibit 19, Appendix B (a copy of

2    the former statute is appended to the prosecutor's brief under cause number 55822-6-I).  At the

3    time of his trial in 1998, Washington law increased the length of the sentencing enhancements,

4    and authorized the enhancements for all three of his crimes.  The 1998 trial proceeded utilizing

5    the 1998 version of the statute rather than the 1994 version of the statute.  *See* Dkt. 44, Exhibit

6    19, at 5 (referencing the charged offenses and sentencing enhancements).  The prosecution

7    contended Mr. Freeburg committed the murder by shooting the deceased victim, committed the

8    burglary by entering the apartment with a firearm, and committed the assault of the surviving

9    victim with a firearm.  At the conclusion of trial, the jury issued special verdicts, finding Mr.

10   Freeburg committed each of his three crimes with the use of a firearm.  Dkt. 44, Exhibit 63,

11   Transcript, April 10, 2002, p. 3730.

12           In 2005, after the state court reversed the initial sentence of life imprisonment, Mr.

13   Freeburg was resentenced to a standard range sentence of 411 months, plus an additional 60

14   months for the sentencing enhancements.  Dkt. 44, Exhibit 16, at 4.  On appeal, the Washington

15   Court of Appeals determined that the 60 month enhancement was incorrect because it was based

16   on the statute in effect at the time of Mr. Freeburg's trial instead of the statute in effect on the

17   date of Freeburg's crimes.  *Id.*, Exhibit 21, p. 10.  The court held that Mr. Freeburg was eligible

18   only for an 18-month enhancement.  *Id.,* Exhibit 21, at 10.  The court remanded for resentencing

19   on the enhancement only.  *Id.,* Exhibit 21, at 10.

20           When Mr. Freeburg raised the issue in his 2007 resentencing, his complaint was not that

21   he lacked notice of the sentencing enhancements.  Rather, Mr. Freeburg complained that the later

22   statute imposed a "hard time" enhancement that did not allow a reduction for good time, while

23   the statute in effect at the time of the crime allowed for good time.  *Id.*, Exhibit 30, at 4-5.  Mr.

REPORT AND RECOMMENDATION- 16

Freeburg believed an erroneous instruction on the availability of good time might have improperly swayed the jury as to the guilt on the underlying crimes. *Id.*, Exhibit 30, at 5-6. But the judge correctly pointed out that the jury at trial was never instructed as to "hard time versus good time." *Id.*, Exhibit 30, at 5. The judge pointed out that "none of that was ever discussed with this jury," and "never had any role in your trial." *Id.,* Exhibit 30, at 8. The judge then sentenced Mr. Freeburg to the correct amount of time authorized by the sentencing enhancement statute in effect on the date Mr. Freeburg committed his crimes. *Id.*, Exhibit 30, at 11.

When Mr. Freeburg raised the claim in his state court appeal in his pro se Statement of Additional Grounds, the Washington Court of Appeals determined the claim was too conclusory to warrant relief, and the court denied the claim without discussion. Dkt. 44, Exhibit 35, at 6.

The record reflects that Mr. Freeburg had adequate notice of the charges, including the fact that he allegedly used a firearm to commit his crimes. He also had adequate notice that in addition to the sentence imposed for his crimes, he faced a sentencing enhancement. Although the trial court referenced the wrong statute, Mr. Freeburg still had adequate notice to prepare his defense and cannot show the requisite prejudice.

Mr. Freeburg does not show the state court adjudication of Claim 2 was an unreasonable application of clearly established federal law and therefore, Claim 2 should be denied.

**D.     Claim 3 – Ex Post Facto Claim**

Mr. Freeburg contends that his sentences based on the post-1995 weapon enhancements violated the constitution's prohibition on ex post facto punishment.

The Ex Post Facto Clause applicable to the States "provides simply that '[n]o State shall . . . pass any . . . ex post facto law." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting Art. 1, § 10, cl. 1.). The Clause prohibits "'[e]very law that changes the punishment, and inflicts a

greater punishment, than the law annexed to the crime, when committed.'" *Rogers*, 532 U.S. at 456 (*quoting Calder v. Bull*, 3 Dall. 386, 390, 1 L. Ed. 648 (1798) (seriatim opinion of Chase, J.); *see also Weaver v. Graham*, 450 U.S. 24, 28-29 (1981).  The Clause also prohibits laws that retroactively make an act criminal, that aggravates a crime, or that alters the legal rules of evidence necessary to convict a person for a crime.  *Rogers*, 532 U.S. at 456.  To establish an ex post facto violation, the plaintiff must show the law retroactively increases the punishment beyond that authorized at the time the plaintiff committed the crime.  *Collins v. Youngblood*, 497 U.S. 37, 41-43 (1990); *United States v. Yacoubian*, 24 F.3d 1, 9-10 (9th Cir. 1994).

When Mr. Freeburg committed his crime, the sentencing enhancement statute authorized only an 18 month enhancement for his use of a firearm to commit the crimes.  *See* Former RCW 9.94A.310.  When Mr. Freeburg was sentenced in 2005 to a sentencing enhancement of 60 months, that sentence exceeded the sentence authorized at the time Mr. Freeburg committed his crime.  Dkt. 44, Exhibit 16.  The 60 month sentence, imposed under the later enacted statute, constituted an increase in the authorized punishment prohibited by the Ex Post Facto Clause. The Washington Court of Appeals recognized that Mr. Freeburg was improperly sentenced under the later enacted statute and the court reversed that portion of the sentence.  *Id.*, Exhibit 21.  The superior court in 2007 imposed a new sentence, correctly sentencing Mr. Freeburg to the 18 month sentencing enhancement authorized by the statute in effect on the date of his crimes.  *Id.*, Exhibit 1.  Because the state court corrected the error and imposed the sentence authorized by the statute in existence on the date of the crime, the ex post facto claim is now moot.

Mr. Freeburg does not show the state court adjudication of Claim 3 was an unreasonable application of clearly established federal law and therefore, Claim 3 should be denied.

REPORT AND RECOMMENDATION- 18

**D.      Certificate of Appealability**

If the district court adopts the Report and Recommendation, it must determine whether a certificate of appealability ("COA") should issue.  Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Freeburg-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court recommends that Mr. Freeburg not be issued a COA.  No jurist of reason could disagree with this Court's evaluation of his habeas claims or would conclude that the issues presented deserve encouragement to proceed further.  Mr. Freeburg should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

The Court recommends **DENYING** Mr. Freeburg's habeas petition on the merits without an evidentiary hearing, and **DENYING** the issuance of a certificate of appealability.

Any objections to this Recommendation must be filed and served upon all parties no later than **Monday, August 11, 2014.**  The Clerk should note the matter for **Thursday, August 14, 2014,** as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the

REPORT AND RECOMMENDATION- 19

1   response is due.  Objections and responses shall not exceed twelve (12) pages.  The failure to

2   timely object may affect the right to appeal.

3           DATED this  28th  day of July, 2014.

4

5   _____

       BRIAN A. TSUCHIDA

6          United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION- 20